377 A.2d 220.

## ALICE V. BAILEY *vs.* HELEN HULING.

### AUGUST 25, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

BEVILACQUA, C.J. This civil action for alienation of affections[1] and for criminal conversation was brought by the plaintiff, Alice V. Bailey, against one of her husband's employees, Helen Huling. After a trial in the Superior Court, the jury returned a verdict for the plaintiff on both counts in the amount of $76,000. Thereafter the trial justice denied the defendant's motion for a new trial. The case is now before us on the defendant's appeal.

The plaintiff and Ernest E. Bailey were married on May 31, 1935 and have four children. She testified that, generally, up until 1946 they maintained a good marital relationship. It appears, however, that at about this time, Mr. Bailey's growing business interests placed him in close proximity with one of his employees, defendant Huling. According to plaintiff, her husband began spending a considerable amount of time away from home and traveled to a variety of places including Jamaica, Mexico, and Florida accompanied by defendant Huling. Rumors concerning the relationship between Mr. Bailey and defendant began to circulate in the small town where the Baileys lived and were eventually brought to the attention of plaintiff. As a result,

---

[1] We note that approximately 15 states have statutorily abolished causes of action or alienation of affections. Schantz, *The American Legal Environment* 849 (1976).

plaintiff traveled to a secluded cottage in Connecticut which she learned her husband had recently purchased after some investigation. There she unexpectedly confronted him. Also with Mr. Bailey at that time was defendant Huling and a small child who was identified by plaintiff as "their baby." The child was approximately 15 months old and according to a certification of birth registration introduced into evidence over defense counsel's objection, was defendant Huling's son, Danny Douglas Huling.

In 1962 Mr. Bailey left the family residence and moved to a new residence at the Tower House Motor Inn, a motel which he owned and at which defendant Huling was also living.

The defendant Huling, after being called upon to testify pursuant to our adverse witness statute, G.L. 1956 (1969 Reenactment) §9-17-14, stated that her prior marriage to Mr. Nicholas Littlefield had ended in divorce. When asked by plaintiff's counsel whether her husband had filed a petition for divorce approximately 2 years after they were married, defendant replied that she did not know when the petition had been filed. The plaintiff's counsel then alluded to the petition, identifying it by number and the date on which it was filed and the alleged grounds for divorce, willful desertion and gross misbehavior. Defense counsel then objected; however, the trial justice ruled that question was proper. Nevertheless, plaintiff's counsel rephrased his question concerning the divorce petition so as to include only the ground upon which the divorce had been granted, willful desertion. A certified copy of the final decree was admitted into evidence. The defendant was then asked, over objection, who the father of her son was, but she refused to identify him. Later, on direct examination she stated that the child's father was not Mr. Bailey.

In his testimony Mr. Bailey denied any wrongdoing between himself and defendant Huling and explained the incidents mentioned by plaintiff in a different light. He stated

that for business reasons he was required to do a certain amount of traveling and that defendant Huling accompanied him on these trips, staying in a room separate from his own, in order to familiarize herself with the motel business.[2] Additionally, Mr. Bailey stated that he was under a physician's instructions not to travel without someone who was familiar with his medical condition and who could administer the medication he was required to take periodically. Concerning the incident at the cottage, Mr. Bailey stated that defendant Huling had initially gone to a used-car lot which he owned in Connecticut to speak with him about possible employment. There defendant Huling was told that Mr. Bailey was at his cottage. After receiving directions defendant met with Mr. Bailey at the cottage. It was during this meeting that Mr. Bailey and defendant Huling were confronted by plaintiff.

## I

On appeal, defendant contends that the trial justice erred in allowing into evidence the birth certificate of defendant's apparently illegitimate child and the grounds alleged in her former husband's petition for divorce. Specifically, defendant argues that this evidence was not connected during the trial in any way to her relationship with Mr. Bailey, and therefore was irrelevant and inadmissible. We disagree.

The nature of an action for alienation of affections or criminal conversation often necessitates a reliance on circumstantial evidence, *Hargraves* v. *Ballou*, 47 R.I. 186, 131 A. 643 (1926); such evidence is admissible as long as it "tend[s] to connect the defendant with the wrong charged * * *." *Knight* v. *Willey*, 120 Vt. 256, 260, 138 A.2d 596, 599 (1958).

The birth certificate established that defendant's son was

---

[2]The defendant managed the Tower House Motor Inn, a motel owned by Mr. Bailey. She lived there as well, her duties apparently requiring her continuous presence.

born after she was divorced. Testimony at trial disclosed that for sometime prior to the divorce hearing defendant Huling lived separate and apart from her husband. During this time she was friendly with plaintiff's husband, and she admitted that she had been in his company on numerous occasions during the time that the child must have been conceived. Thus, there was sufficient evidence tending to connect the birth of defendant's child and her relationship with Mr. Bailey. As a result we conclude that the birth certificate was admissible.

Assuming without deciding that it was improper to admit evidence of the grounds alleged in the petition for divorce, we must determine whether the admission of this evidence was prejudicial to defendant, and the test is "whether it reasonably tended to exert an influence upon the determination of the real issue in the case." *Heuser* v. *Goldstein*, 107 R.I. 317, 321, 267 A.2d 420, 422 (1970); *Nugent ex rel. Hurd* v. *City of East Providence*, 103 R.I. 518, 238 A.2d 758 (1968); *Abilheira* v. *Faria*, 102 R.I. 214, 229 A.2d 758 (1967); *New England Box & Barrel Co.* v. *Travelers Fire Ins. Co.*, 63 R.I. 315, 8 A.2d 805 (1939).

The evidence in the instant case established that defendant and plaintiff's husband were frequently in each other's company; they worked together, went away on trips together, and lived in the same building. There was ample evidence, although circumstantial, to warrant a finding that defendant was guilty of alienation of affections and criminal conversation. See *Hargreaves* v. *Ballou, supra*. As a result, we conclude that the admission of this evidence was not prejudicial.

## II

The defendant contends that plaintiff's testimony about the rumors concerning the relationship between defendant and plaintiff's husband was hearsay and therefore inadmissible. The question at issue was, "Mrs. Bailey, based on what you heard around town in Lafayette around 1950 or

so, did this cause you to take any action?" The plaintiff responded, "I tried to have her put out of the garage [Mr. Bailey's business] and he would not let her go. He said it was a public place."

The hearsay rule does not apply to out-of-court statements which are not offered to prove the truth of the matters contained therein. *Allen* v. *D'Ercole Constr. Co.*, 104 R.I. 362, 244 A.2d 864 (1968). Here, the contents of the rumors were not disclosed. In addition, plaintiff was not asked about the rumors for the purpose of showing their truth, but rather to show plaintiff's motivation for her subsequent action. Consequently, we conclude that this was not hearsay, and therefore, the trial justice did not err in this regard.

### III

The defendant contends that the trial justice improperly instructed the jury in answering the following questions which were submitted to him by the jury: (1) " 'Does there have to be a deliberate effort made by defendant to procure to alienate affections?' " and (2) " 'Does the defendant have to be the major cause of the breakup of the marriage?' "

In answering these questions the trial justice quoted the following from *Senn v. Kogut*, 79 R.I. 429, 437, 89 A.2d 842, 846 (1952), which is settled law in this jurisdiction.

> "[I]f the jury found from the evidence that defendant's conduct was the procuring or contributory cause in bringing about plaintiff's loss of her husband's affections then plaintiff was entitled to recover; and that this was so even though defendant may have been the pursued, provided that knowing him to be a married man she yielded to the husband's pursuit and intentionally joined in relations with him that resulted in his enticement and staying away from his wife."

*See also D'Ambra v. Ohanian*, 77 R.I. 218, 74 A.2d 646 (1950). We conclude that the trial justice's answers to the

jury's questions were proper and not erroneous as contended by defendant.

## IV

The defendant also contends that the trial justice erred in denying her motion for a new trial because there was insufficient evidence to support the verdict. We disagree.

In ruling on a motion for a new trial, it is the duty of the trial justice "to consider in the exercise of his independent judgment all of the material evidence in the case in the light of his charge to the jury and to pass on its weight and the credibility of the witnesses." *Barbato* v. *Epstein*, 97 R.I. 191, 193, 196 A.2d 836, 837 (1964). On appeal from the denial of a motion for a new trial, the movant must persuade this court that the trial justice in deciding the motion was clearly wrong or that he overlooked or misconceived material evidence on a controlling issue in the case. *Lemieux* v. *American Universal Ins. Co.*, 116 R.I. 685, 700, 360 A.2d 540, 547 (1976); *Fontaine* v. *Devonis*, 114 R.I. 541, 550, 336 A.2d 847, 854 (1975); *Pimental* v. *D'Allaire*, 114 R.I. 153, 159, 330 A.2d 62, 65-66 (1975). The trial justice, in passing on defendant's motion for a new trial, thoroughly reviewed all of the evidence and furthermore indicated that he would have decided the case in the same manner had he heard it without a jury. We are satisfied that the trial justice correctly perceived and executed his duty in considering the motion. Since defendant has failed to demonstrate that the trial justice was clearly wrong or that he overlooked or misconceived material evidence, we affirm the denial of defendant's motion for a new trial.

The defendant also argues that the jury verdict of $76,000 ($75,000 for alienation of affections and $1,000 for criminal conversation) was grossly excessive, and that the trial justice erred in denying her motion for a new trial on this ground. We disagree.

It is settled law in this jurisdiction that a plaintiff is enti-

tled to recover compensatory damages for alienation of affections, and that criminal conversation furnishes the necessary elements for the addition of punitive damages. *Hargraves* v. *Ballou, supra*. In *Hargraves* this court noted that the compensatory damages in cases involving both criminal conversation and alienation of affections should be substantial. The court further stated:

> "The award is dependent on many circumstances and the reluctance of the courts to disturb, as excessive, damages which are incapable of accurate measurement is well established." *Id.* at 190, 131 A. at 646.

The evidence in the instant case indicated that the relationship between defendant and plaintiff's husband covered a period of approximately 30 years. We are reluctant to set aside the jury's verdict in the absence of passion, prejudice or gross abuse of the jury's power. *See Hargraves* v. *Ballou, supra.* Under the circumstances we cannot say that the verdict was grossly excessive.

V

Finally, defendant argues that it was improper to award 8 percent interest on the jury verdict pursuant to §9-21-10. The defendant cites *Senn* v. *Kogut, supra,* in support of this contention.

Section 9-21-10[3], as amended by P.L. 1970, ch. 184, §1 provided:

> "In causes of action and actions for damages to the person or to real and personal estate in which a verdict is rendered or a decision is made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages, interest at the rate of eight percent (8%) per annum thereon from the date of com-

---

[3]Section 9-21-10 was substantially changed by 1975 and 1976 amendments, to become effective on May 20, 1975 and May 26, 1976 respectively. Neither amendment is applicable, however, since judgment in this case was entered on May 2, 1975.

mencement of the action which shall be included in the judgment entered therein."

In *Isserlis* v. *Director of Pub. Works*, 111 R.I. 164, 300 A.2d 273 (1973), this court stated that the purpose of §9-21-10 was to eliminate the common law barrier to the imposition of interest on awards of damages for actions sounding in tort. However, by its terms, this section applies only to "actions·for damages to the person or to real and personal estate * * *." The words of a statute cannot be interpreted or extended, but must be applied literally, where the language used is unambiguous and unequivocal. *In re Shepard Co.*, 115 R.I. 290, 342 A.2d 918 (1975); *Andreozzi* v. *D'Antuono*, 113 R.I. 155, 319 A.2d 16 (1974); *Podborski* v. *William H. Haskell Mfg. Co.*, 109 R.I. 1, 279 A.2d 914 (1971). Moreover, the Legislature is presumed to have known the state of existing relevant law when enacting a statute. *Aust* v. *Marcello*, 112 R.I. 381, 387, 310 A.2d 758, 761 (1973). In *Senn* v. *Kogut, supra*, we held that while actions for alienation of affections were actions sounding in tort, they were not actions for personal injuries. It is also evident that they are not actions for damages to personal and real estate. And since the nature of an action for criminal conversation is substantially the same as one for alienation of affections, we conclude that §9-21-10 by its terms is not applicable to these actions. As a result, it was error to award 8 percent interest to the jury verdict from the date of the commencement of this action.

The defendant's appeal is sustained in part and denied in part, the judgment appealed from is affirmed except as to the award of interest, and the cause is remanded to the Superior Court for the recomputation of interest on the jury verdict in accordance with this opinion.

*Goldman, Biafore & Hines, John D. Biafore, Thomas F. Almeida,* for plaintiff.

*Edward M. Botelle, Smith & Smith Incorporated, Z. Hershel Smith,* for defendant.